# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TRACY L. VALLE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:18-cv-02383-PX |
| CLINICAL REFERENCE LABORATORY, INC., *et al.*, | * | |
| | * | |
| Defendants. | | |

\*\*\*

## MEMORANDUM OPINION

Pending before the Court are Plaintiff's motion to remand (ECF No. 9) and Defendants' motions to dismiss the Amended Complaint (ECF Nos. 19, 23). The motions are fully briefed and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court denies Plaintiff's motion and grants Defendants' motions (ECF Nos. 19, 23).[1]

**I.  Background**

For purposes of this Opinion, the Court accepts the facts pleaded in the Amended Complaint as true and construes them most favorably to Plaintiff, Tracy Valle ("Valle"). *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). As of June 2015, Valle was "employed by Freeman Decorating Co." and was also a member of the Mid-Atlantic Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America ("Union"). ECF No. 11 ¶¶ 2, 4. The Union entered into a collective-bargaining agreement negotiated by Defendant Trade Show Contractors Association of Washington, DC and Vicinity ("TSCA"), on behalf of its contractors, of which Freeman Decorating was one. *Id.* ¶ 2; ECF No. 23-2 at 39.

---

[1] Defendants' original motions to dismiss (ECF Nos. 2, 3) are denied as moot. *See Johnson v. Asset Acceptance, LLC*, No. GLR-15-538, 2015 WL 8760737, at *1 (D. Md. Dec. 15, 2015).

This agreement, known as the Show Site Agreement ("SSA") "governed Union members' work on trade shows within the geographical area of the Union." ECF No. 11 ¶ 2. Under the SSA, Union members are "subject to unannounced random drug and alcohol testing during any working hours." ECF No. 23-2 at 23. If a Union member tests positive for any of the controlled substances listed in the SSA, which includes phencyclidine (*id.* at 24), the SSA commands that the member is removed from the "Employer's payroll and is immediately suspended from employment and ineligible for dispatch by the Union to any Employer signatory." *Id.* at 25.

On June 30, 2015, Valle was working at the Gaylord National Resort and Convention Center on a job covered by the SSA. TSCA requested that Valle submit to a random drug test on location. ECF No. 11 ¶ 5. Valle complied, and the test was administered by Friends Multiservice, Inc., "an agent, servant or employee" of Defendant Clinical Reference Laboratory, Inc. ("CRL"). *Id.* ¶¶ 5, 6. Two weeks later, CRL's Medical Review Officer, Dr. Charles Briggs, notified Valle that her drug test results returned positive for phencyclidine. *Id.* ¶ 7. Valle challenged the validity of the results, telling Dr. Briggs that she had not taken the drug. *Id.* Valle followed up with TSCA shortly after and was informed that she "could not return to the Gaylord trade show site nor could she work on any other trade show site" covered by the SSA. *Id.* ¶ 8.

Based on these events, Valle sued CRL, TSCA and the Union in the Circuit Court for Prince George's County on June 18, 2018, for breach of the SSA and wrongful discharge. ECF No. 1 ¶ 1; ECF No. 1-4 at 1–2. Defendant TSCA, with the consent of CRL and the Union, removed the action to this Court. As grounds for removal, TSCA maintained that federal question jurisdiction existed because the claims concerned breach of a collective bargaining

agreement, and thus, are preempted under Section 301 of the Labor Management Relations Act ("LMRA"). ECF No. 1 ¶ 4. TSCA and CRL (collectively, "Defendants") then moved to dismiss the action for failure to state a claim. ECF Nos. 2, 3.

In response, Valle simultaneously amended the Complaint to eliminate the breach of contract claim, dismissed the Union as a defendant, and moved to remand the case to state court because the remaining wrongful discharge claim "lie[s] under Maryland law, not federal law." ECF No. 9 ¶ 2; *see also* ECF Nos. 9–11. Defendants again moved to dismiss the wrongful discharge count as time-barred and for failure to state a claim. ECF Nos. 19, 23.

The Court first considers Valle's remand motion.

## II. Motion to Remand

### A. Standard of Review

State court actions that originally could have been brought in federal court may be removed pursuant to 28 U.S.C. § 1441. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Section 1441 permits removal pursuant to this Court's federal question jurisdiction. 28 U.S.C. § 1441(a). When removal is challenged, the defendant as the removing party bears the burden of "demonstrating the court's jurisdiction over the matter." *Strawn v. AT & T Mobility, LLC*, 530 F.3d 293, 296 (4th Cir. 2008). Federal courts construe removal statutes strictly and resolve all doubts in favor of remand. *See Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 260 (4th Cir. 2005).

### B. Analysis

According to Defendants, removal is proper because Valle's wrongful discharge claim is preempted under § 301 of the LMRA even though the claim does not allege breach of the SSA.

3

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The most direct application of § 301 concerns claims "for violation of contracts between an employer and a labor organization." *Davis v. Bell Atl.-W. Va., Inc.*, 110 F.3d 245, 247 (4th Cir. 1997) (quoting *Franchise Tax Bd. v. Const. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983)). Section 301, however, "not only provides federal courts with jurisdiction over employment disputes covered by collective bargaining agreements ["CBA"], but also directs federal courts to fashion a body of federal common law to resolve such disputes." *McCormick v. AT & T Techs., Inc.*, 934 F.2d 531, 534 (4th Cir. 1991) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)).

Whether § 301 preempts a common law cause of action becomes less clear when the claim does not plead a violation of the collective-bargaining agreement. Generally, the well-pleaded complaint rule "allows a plaintiff to avoid federal jurisdiction by relying exclusively on state law and prevents removal to federal court on the basis of a federal preemption defense." *Verbal v. Giant of Md., LLC*, 204 F. Supp. 3d 837, 842 (D. Md. 2016) (citing *Caterpillar, Inc.*, 482 U.S. at 392–93; and *Franchise Tax Bd.*, 463 U.S. at 12). However, an important exception to the well-pleaded complaint rule exists where the claim is completely preempted by the federal statute. *Id.* at 842 (citation omitted). A claim is completely preempted under § 301 "when resolution of the claim requires the interpretation of a collective-bargaining agreement . . . or is

4

inextricably intertwined with consideration of the terms of the labor contract." *Foy v. Giant Food Inc.*, 298 F.3d 284, 287 (4th Cir. 2002) (internal quotations and citations omitted). Complete preemption turns not on "whether the source of a cause of action is state law, but whether resolution of the cause of action requires interpretation of a collective bargaining agreement." *McCormick*, 934 F.2d at 535. This Court considers "the essential elements of the state law tort claims" to "determine whether the state law claim can be resolved without interpreting or depending on the proper interpretation of the collective-bargaining agreement." *Verbal*, 204 F. Supp. 3d at 842 (citation omitted); *see also McCormick*, 934 F.2d at 535.

In this analysis, "[f]orm is not to triumph over substance as employees relabel contract claims" as tort claims. *Davis*, 110 F.3d at 247 (citing *Allis-Chalmers Corp.*, 471 U.S. at 211). Artful pleading designed to "circumvent the power of § 301's preemptive force," will not save the claim from complete preemption. *Id*. However, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require" preemption. *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994); *see also McCormick*, 934 F.2d at 535 ("[M]ere parallelism between the facts and issues to be addressed under a state law claim and those to be addressed under § 301 does not render the state-law analysis dependent on the collective bargaining agreement."). With this standard in mind, the Court turns to the wrongful discharge claim as pleaded in the Amended Complaint.

The gravamen of Valle's wrongful discharge claim is that CRL and TSCA violated "a clear mandate of public policy" by failing to comply with certain drug testing procedures codified under Md. Code Ann., Health-Gen., § 17-214(c) and COMAR 10.10.10.08(A). ECF No. 11 ¶¶ 14–20. A wrongful discharge claim requires that plaintiff demonstrate: (1) she was discharged by her employer, (2) the employer's discharge violated some clear mandate of public

policy, and (3) a nexus exists between the plaintiff's allegedly protected conduct and the employer's decision to discharge her. *See Yuan v. Johns Hopkins Univ.*, 452 Md. 436, 451 (2017). Valle argues that because her wrongful discharge claim "rests solely [on Defendants'] failure to comply" with Maryland's statutory drug testing requirements, the claim "by its very nature is adopted by a state and not established through a private contract." ECF No. 26-1 at 11.

Two problems plague Valle's analysis. First, Valle ignores that in a wrongful discharge action, the finder of fact must first determine that Plaintiff was "discharged." Here, the grounds for Valle's discharge turn on whether she violated the SSA by testing positive for one of the enumerated controlled substances. The finder of fact, therefore, cannot help but consider the SSA in determining the circumstances which led to Valle's termination.

Second and most fatally, Valle's claim necessarily depends on the fact finder determining that TSCA is her "employer." *See Adler v. Am. Standard Corp.*, 291 Md. 31, 47 (1981) (wrongful discharge claim lies against "an *employer* of an at will employee when the motivation for the discharge contravenes some clear mandate of public policy") (emphasis added). In alleging her employer-employee relationship with Defendants, Valle relies exclusively on the SSA. The Amended Complaint avers that the SSA's terms created and "established an employment relationship between Plaintiff" and TSCA (ECF No. 11 ¶ 12), and as to CRL "vicariously as acting on behalf of the employer, TSCA." *Id.* ¶ 18. As pleaded, therefore, the fact finder necessarily must interpret the SSA to decide whether Defendants are Valle's employer. *Cf. Verbal*, 204 F. Supp. 3d at 843 (wrongful discharge claim completely preempted where jury must interpret CBA to determine whether Plaintiff fired for just cause); *Tall v. MV Transp.*, No. RWT 12-417, 2012 WL 4480720, at *2 (D. Md. Sept. 27, 2012) ("Any state law claim that involves the interpretation or analysis of a CBA's terms is automatically preempted by

6

the LMRA and must be brought instead under § 301."), *aff'd per curiam*, 512 F. App'x 355 (4th Cir. 2013). Because the wrongful discharge claim is inextricably intertwined with the terms of the SSA, the claim is completely preempted by § 301, and the Court properly retains federal question jurisdiction over this matter. Valle's motion to remand is denied.

The Court next turns to Defendants' motions to dismiss the wrongful discharge claim.

## III. Motion to Dismiss the Wrongful Discharge Claim

### A. Standard of Review

A motion to dismiss tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

In ruling on a Rule 12(b)(6) motion, the Court generally may not consider extrinsic evidence. *Zak v. Chelsea Therapeutics, Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) ("Consideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment."). However, when a defendant attaches a document to its motion to dismiss, the Court may consider that document if it is "integral to and explicitly relied on in the complaint" and the plaintiff does not challenge its authenticity.[2] *Id.* at 606–07 (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618

---

[2] Although Plaintiff does not attach the SSA to the Amended Complaint, the agreement is nonetheless integral to Valle's claims. *See* ECF No. 11 ¶¶ 2, 3, 12. Further, Valle has not challenged the authenticity of the SSA attached to Defendant TSCA's motion to dismiss. *See* ECF No. 23-2. Therefore, the Court may consider the SSA without converting the motion to dismiss into one for summary judgment.

7

(4th Cir. 1999)).

## B. Analysis

Defendants first contend that because Valle's action is completely preempted by § 301 of the LMRA, it is also time-barred. Suits brought pursuant to the LMRA must be filed within six months from an employee's termination. *See Foy*, 298 F.3d at 291 (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 171–72 (1983)). The limitations clock "begins to run when an employee discovers, or should have discovered, the acts constituting the alleged violation." *Tall*, 2012 WL 4480720, at *3; *see also Verbal*, 204 F. Supp. 3d at 845 (citing the plaintiff's termination date as the date the statute of limitations began to run).

The Amended Complaint avers that Valle was "terminated" from participating in SSA job placements as of June 30, 2015, the date of her drug test. ECF No. 11 ¶ 4. Even if the Court liberally construes the Amended Complaint most favorably to Valle, the last adverse action that could plausibly be construed as Valle's "termination" occurred in July of 2015, when Valle learned that she was no longer eligible to work on any jobs that fell within the ambit of the SSA. Valle knew of her termination as of July 2015, yet did not file this action until nearly three years later. ECF No. 1 ¶ 1. Valle's claim is thus time-barred.

Alternatively, even if Valle's claim was not time-barred, it nonetheless fails as a matter of law for failure to assert plausibly that Defendants are her "employers." A wrongful discharge claim under Maryland law constitutes a limited exception to the at-will employment doctrine. *Adler*, 291 Md. at 47. Consequently, the claim may only proceed by an employee against her employer. *See Yansaneh v. Care One, LLC*, No. PWG-15-81, 2015 WL 3892032, at *2 (D. Md. June 23, 2015) (dismissing a wrongful discharge claim because plaintiff did not allege that defendant was his employer); *Richardson v. P & O Ports Baltimore*, No. CCB-09-631, 2009 WL

8

2487080, at *3 (D. Md. Aug. 12, 2009) (dismissing a wrongful discharge claim against the collective bargaining agent of plaintiff's employer because the bargaining agent "was not . . . the employer").

Under Maryland law, courts traditionally consider five factors in determining whether an employer-employee relationship exists; whether the employer retains the power to (1) select and hire the employee, (2) pay wages, (3) discharge the employee, (4) control the employee's conduct and (5) engage the employee in work that is part of the employer's regular business. *Yansaneh*, 2015 WL 3892032, at *2 (citing *Whitehead v. Safway Steel Prods., Inc.*, 304 Md. 67, 77–78 (1985)). Taking all facts in the Amended Complaint as true and most favorably to Valle, she has failed to plead a sufficient employer-employee relationship with TSCA.

Valle centrally contends that despite being "originally employed by Freeman Decorating Co.," the "SSA established an employment relationship" between her and TSCA. ECF No. 11 ¶¶ 2, 12. Valle further avers that "the SSA regulated the use of employees and included provisions regulating various aspects of the employment relationship such as selection of employees, wages and benefits," and that "TSCA controlled the hiring, selection and firing of the Plaintiff, paid her wages, and provided her with benefits." *Id.* at ¶ 3.

However, no plausible reading of the SSA, on which Valle's claim entirely rests, renders TSCA her employer. The SSA states that Union members such as Valle are deemed "Employees" with respect to the individual contractors who join TSCA and enjoy the benefits of membership in the Association. ECF No. 23-2 at 5. Freeman Decorating is one such contractor. *Id.* at 39. The SSA makes clear that TSCA is the "collective bargaining representative" of the "Employers, who have authorized the Association to represent them." *Id.* at 5. But nowhere

9

does the SSA assign to TSCA the functional rights and responsibilities of an employer with regard to union members such as Valle.

Rather, the SSA clearly states that the "Contractor" (which includes Freeman Decorating) assumes responsibilities consistent with that of an employer. Under the SSA, the Contractor is responsible for hiring and firing employees. *See id.* at 7 ("The Contractor shall discharge immediately any Employee who has not acted in accordance with the foregoing provisions."); *id.* at 27 (enumerating the grounds for contractor's immediate discharge of employees).

The Contractor also pays the employee wages according to the SSA's terms. *See id.* at 14 ("The Contractor shall be responsible for the preparation of all paychecks to all of its Employees with name and address printed on the check or envelope. All pay stubs shall include the Contractor's name, the hours worked during the immediate pay period, and the hours worked by the Employee for the Contractor in the calendar year to date."); *id.* at 15 ("The Contractor is solely responsible for all wages that are due and all income tax payments and other withholdings that must be made with respect to earnings."); *id.* at 7 ("[T]he Contractor agrees to deduct [union dues] once each week from the wages of each Employee covered by this Agreement.").

The Contractor additionally oversees employee working conditions and is vested with discretion to enforce the negotiated employment terms of the SSA. *See id.* at 11 ("If an Employee does not report to work with the required tools, the Contractor has the right to refuse to employ the Employee."); *id.* at 17 ("Employees who use their own vehicle on Contractor business, at the Contractor's request, shall be paid at the rate of forty-four and one-half cents (44.5 cents) per mile and reimbursement of additional parking with parking receipt."). Nowhere does the SSA vest the TSCA with any similar responsibilities as to employees such as Valle. In short, the bald assertion that the SSA renders TSCA Valle's "employer" is belied by the SSA

itself. Because no plausible reading of the SSA supports that the TSCA is Valle's employer, the claim fails as a matter of law.

The claim as to CRL similarly fails. The Amended Complaint identifies CRL as Valle's employer solely because of an "agency relationship" created between TSCA and CRL which is tasked with administering the drug tests to union members under the SSA. ECF No. 11 ¶ 18. Putting to one side whether agency alone may render CRL an "employer," Valle's claim as to CRL necessarily depends on the viability of Valle's claim against TSCA. Consequently, because no set of facts as pleaded in the Amended Complaint renders TSCA Valle's employer, the outcome is no different for CRL as TSCA's "agent." The wrongful discharge claim must be dismissed as to both Defendants.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion to remand is DENIED. Defendants' motions to dismiss (ECF Nos. 2, 3) are DENIED as moot, and Defendants' motions to dismiss the Amended Complaint (ECF Nos. 19, 23) are GRANTED. A separate Order follows.

3/13/2019  /S/
Date  Paula Xinis
United States District Judge